IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAREY INTERNATIONAL, INC., AS PLAN ADMINISTRATOR OF THE CAREY INTERNATIONAL, INC. HEALTH AND WELFARE PLAN<br><br>Plaintiff,<br><br>v.<br><br>MARINA MONTOYA, DARIUS TAYLOR, and NORTHERN TRUST COMPANY, as Co-Guardians of the Estate of D.T., a minor<br><br>Defendant. | No. 13 C 2028<br><br>Judge John A. Nordberg |

## MEMORANDUM OPINION AND ORDER

Marina Montoya works for a subsidiary of Carey International, Inc. ("Carey"), and is a participant in the Carey International, Inc. Health and Welfare Plan (the "Plan"), a self-funded employee plan governed by ERISA. The Plan also covers Montoya's son, D.T. In 2006, D.T. was injured and required extensive medical care. We do not know the nature of his injury, as the parties do not tell us, but we can infer it was significant because Maria Montoya, Northern Trust Company, and Darius Taylor (D.T.'s father), collectively co-guardians for D.T.'s estate as well as defendants here, filed a lawsuit in the Illinois Circuit Court of Cook County against several hospitals and eventually negotiated a settlement for $35 million. The co-guardians then filed a petition seeking approval from the Circuit Court to distribute the $35 million to various parties.

In a March 11, 2013 order, the Circuit Court approved the request. As described therein, $9.8 million in attorneys' fees and $418,550.52 in expense reimbursements would be distributed to D.T.'s attorneys; $10 million would be distributed to insurance companies to buy annuity policies paying D.T.$283,000 a year for life; and $14,463,747.60 would be distributed to Northern Trust Company, as co-guardian of the estate of D.T., "pending further distributions of alleged claims to be made to lien holders." (*Id.* at 5.) The parties have not indicated whether any lien holders have made or are expected to make claims or whether the Circuit Court is still overseeing this case. The Plan alleges, on information and belief, that the distributions described in the March 11th order have been made.

As of March 11, 20013, the Plan had paid $1,921,971.69 in medical expenses relating to D.T.'s injury. The Plan filed this lawsuit seeking reimbursement of these payments. The defendants are the three co-guardians of D.T.'s estate (Montoya, Northern Trust, and Darius Taylor). The Plan asserts a claim under Section 502(a)(3) of ERISA. This section allows a plan fiduciary to sue in federal court for equitable but not legal relief. The Plan alleges that under the Plan documents it is entitled to the first dollar of any recovery and that a lien in favor of the Plan shall automatically attach to the proceeds of any recovery a participant obtains from a third party. (Am. Cmplt. ¶ 13.) The Plan requests that we enjoin the disposition of the funds subject to its equitable lien; that we order preservation of the funds by imposing a constructive trust in the amount of $1,921,971.69; that we order this same amount be restored to the Plan; and that we grant any other equitable relief necessary to preserve the Plan's right to reimbursement of any amounts the Plan will pay in the future for D.T.'s medical claims. (*Id.* ¶¶ 20-23.) The Plan alleges that defendants have attempted to eliminate or restrict the Plan's rights to recover these expenses. (*Id.* ¶ 18.)

## Analysis

Before the Court are motions to dismiss, pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6), filed by defendants Northern Trust and Montoya.[1] Defendants argue that we must dismiss the complaint because Section 502(a)(3) only a allows a plan to file a claim for equitable relief and because the claims being asserted here are purely legal claims. In analyzing this issue, we begin by looking at two Supreme Court cases and one Seventh Circuit case. In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), the Supreme Court discussed how a court determines whether a claim is equitable versus legal. The Court described two types of cases. The first is where a plan seeks to impose personal liability on a defendant to pay a sum of money – namely, the amount the plan paid in medical expenses on the beneficiary's behalf. Such a claim is essentially a breach of contract claim and is thus legal in nature. *Id.* at 213. The second type of claim is where the plan focuses its claim on the specific fund obtained by the beneficiary in the state court litigation against third party wrongdoers. *Id.* Such a claim, the Court observed, would be equitable:

> In contrast [to seeking to impose personal liability on the defendant], a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.

*Id.* at 213. As applied to the facts in *Knudson*, the Court concluded the claims were legal because the beneficiaries were named as defendants and they did not have possession of the settlement funds, which were held separately in a Special Needs Trust. *Id.* at 207, 214. The Court left open the possibility that the claim would have been equitable if, instead of naming the beneficiaries as defendants, the plan named the trustee of the Special Needs Trust. *Id.* at 220.

A year and a half later, the Seventh Circuit applied the above language from *Great-West* to find that the plan's claims were equitable. *Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health &*

---

[1]Darius Taylor has not filed an appearance in this action.

*Welfare Plan v. Varco*, 338 F.3d 680 (7th Cir. 2003). In *Varco*, a plan asserted a Section 502 ERISA claim for reimbursement of medical expenses paid to a beneficiary who had recovered funds in a state-court settlement. The settlement was structured such that the beneficiary's attorney, Laurence Dunford, would be paid his fees directly from the settlement, and the remaining funds were put in a reserve account for Varco, the beneficiary. In concluding that the plan's claims against Varco were equitable, the Seventh Circuit stated:

> The [plan] was seeking to impose a constructive trust on the funds held in Varco's reserve bank account. Unlike the legal action addressed in *Great-West Life*, the funds at issue here are identifiable, have not been dissipated, and are still in control of a Plan participant due to the fact that Dunford [*i.e.* the beneficiary's attorney] placed them in a reserve account in Varco's name when they were disbursed. Finally those funds, "in good conscience," – belong to the [plan].

*Id.* at 687.

Several years later, the Supreme Court revisited the issue in *Sereboff v. Mid Atlantic Medical Servs., Inc.*, 547 U.S. 356 (2006). Relying on language from *Great-West*, the Court held that the plan's (Mid Atlantic) claim was equitable:

> Unlike Great-West, Mid Atlantic did not simply seek "to impose personal liability . . . for a contractual obligation to pay money." *Knudson*, 534 U.S., at 210, 122 S.Ct. 708. It alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboffs' assets generally, as would be the case with a contract action at law. ERISA provides for equitable remedies *to enforce plan terms*, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable; that would make § 502(a)(3)(B)(ii) an empty promise. This Court in *Knudson* did not reject Great-West's suit out of hand because it alleged a breach of contract and sought money, but because Great-West did not seek to recover a particular fund from the defendant. Mid Atlantic does.

*Id.* at 363 (emphasis in original).

Defendants here rely on the Seventh Circuit's three-part formulation in *Varco* of the *Great-West* test. For purposes of this motion, they challenge only the control requirement. They argue that the funds they are holding are not in their control because an Illinois probate statute provides that the probate court "shall have control over the person and estate of the ward" and states that the appointed guardian may make disbursement's of the ward's funds "in such amounts as the court directs." 755 ILCS § 5/11-13. Defendants claim that the latter provision prevents them from distributing any of D.T.'s funds without first getting an order of a court, which we understand them to mean an order specifically from the probate court. *See* N.T. Mot. at 6. Therefore, they argue, they are not in control of the funds. They further reason that any order the Plan might obtain in this case would "necessarily come from their own pockets rather than D.T.'s settlement proceeds, which under *Knudson* means that [the Plan's] claim is legal rather than equitable." (*Id.*)

Based on the current record, which is not fully developed, we are not persuaded by this argument. As a preliminary point, the Plan states that it is not seeking a personal judgment against defendants. It has named them in their capacities as co-guardians and seeks an order directed only at the specific funds held by Northern Trust. To the extent that the plan were to seek a personal judgment, we could simply reject such a request. This eliminates one concern raised in *Great-West*.

We turn then to defendants' control argument. In reviewing the three cases above, it is not clear that the Supreme Court meant to impose a control requirement. *Great-West* states only that a plan could obtain an equitable lien or constructive trust if "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." 534 U.S. at 213. This formulation refers to "possession" instead of "control." If only possession is required, then the allegations of the complaint would appear to be enough. Plaintiff is claiming that funds are being held at Northern Trust and that the Plan has a clear contractual right to a portion of those funds.

It is true that the Seventh Circuit in *Varco* used the term "control" when it summarized the *Great-West* test. But it is not obvious that the insertion of "control" rather than "possession" was intentional. The opinion did not focus on the control requirement. It is also true that the Supreme Court later in *Sereboff* used the phrase "possession and control" at one point. 547 U.S. at 363. But like the Seventh Circuit, the Court was not specifically analyzing this requirement and used the phrase when quoting the lower court's opinion. *Id.* Moreover, in summarizing the *Great-West* test, the Court used the word "possession." *Id.* at 362.

However, because the Plan in its response brief seems to accept that there is a control requirement and because *Varco* and *Sereboff* do add at least some support for this interpretation, we will proceed on the assumption that there is such a requirement. But this leads to a question about how to define control. Defendants do not supply any criteria for assessing whether a party is in control of the funds. Nor have we found much analysis of this question in the case law. In *Varco*, the Seventh Circuit concluded that the control requirement had been met "due to the fact that [Varco's attorney] placed [the funds] in a reserve account in Varco's name when they were disbursed." 338 F.3d at 687. While this is only a brief description, it suggests one notion of control – namely, the control that the beneficiary and her attorney had in deciding how and to whom the settlement funds would be distributed. Here, the co-guardians played a role in how the settlement proceeds were distributed. They petitioned the Circuit Court and asked for approval to distribute the funds to, among others, D.T.'s attorneys and to annuity insurance companies.

In the other cases cited by the parties, we also do not see much explanation of what is meant by control. In *Croawford & Co. Med. Benefit Trust v. Repp*, 2012 WL 716921 (N.D. Ill. March. 6, 2012), Judge Kapala described the *Varco* control requirement as requiring that the funds only be "*in some manner* still in the control of the plan participant." *Id.* at 4 (emphasis added). In *Central States v. Lewis*, 871 F.Supp.2d 771 (N.D. Ill. 2012), Judge Lefkow concluded that the plan could maintain an action against the beneficiary's attorney who received a portion of the settlement as attorney's fees because the funds at issue could be traced back to the attorney. Judge Lefkow noted that the attorney "had control of [the beneficiary's settlement] money and chose to pay himself and not to pay [the Plan]." *Id.* at 778. In *Bd. of Trustees v. Filichia*, 2013 WL 329035 (N.D. Ill. Jan. 29, 2013), Judge Chang denied a motion to dismiss a plan's Section 502 claim seeking funds held by the participant's attorney. In

discussing the issue of control, Judge Chang pointed to the fact that the attorney helped the participant to recover the settlement and knew about the plan's rights for reimbursement: "[t]his plausibly pleads that [the attorney] exercised sufficient control over the settlement funds to be a proper defendant[.]" *Id.* at *3. Again, although these cases do not articulate a precise definition of control, they suggest that control during the settlement process may be enough.

The closest case factually is *Iowa Health System, Inc. v. Graham*, 2009 WL 2222780 (C.D. Ill. July 29, 2009). It involved a minor as a beneficiary. Settlement proceeds were put in an account for the minor with his mother in possession as his guardian. Judge McDade granted summary judgment to the plan against the mother. In an earlier ruling in the same case, Judge McDade rejected the mother's argument that she was not in possession and control of this account: "Defendant's argument is not only logically deficient, but would also undermine the purpose of ERISA by shielding all minors from subrogation claims." *Iowa Health System, Inc. v. Graham*, 2008 WL 2959796, *3 (C.D. Ill. July 30, 2008). Although this case lends support to the Plan, Judge McDade did not specifically address the specific argument raised here about the requirement to get a separate order from the probate court before making any distributions of the minor's settlement funds. In sum, the cases cited by the parties do not set forth a uniform definition of control.

In addition to this uncertainty, the parties in their briefs have not provided this Court with a clear explanation of the specific way that these funds will eventually be distributed. This Court has no experience with how the probate court handles these cases. A number of questions arise. If this Court dismissed the current complaint, would there be a viable mechanism in state court for the Plan to assert a claim for reimbursement? Have the defendants previously asked the probate court for permission to pay the Plan its expenses? Did the defendants get an order when they distributed funds to the insurers and to D.T.'s attorneys? If they were to file a motion seeking permission to pay the Plan, what criteria would the probate court use to determine whether to approve the request? We note that the Plan alleges that the participant and her representatives are required to "execute any documents required to secure the Plan's lien." (Am. Cmplt. ¶ 14.) More generally, the Plan has alleged that defendants have sought to eliminate the Plan's right to recover any funds. Does this mean that the defendants will seek to bar the Plan from recovering any of these funds even in a subsequent state court proceeding?

In conclusion, we find that there are too many factual and legal questions unresolved to grant a motion to dismiss. The motions to dismiss [# 27, 30] are therefore denied. The parties can develop the facts through discovery and then, if appropriate, file motions for summary judgment. A status hearing is set for April 9, 2014 at 2:30 p.m. The parties should submit to chambers a proposed preliminary pretrial scheduling order two days before the status hearing.

**ENTER:**

_____
**JOHN A. NORDBERG**
**Senior United States District Court Judge**

**DATED:** March 17, 2014